FILED

AUG 16 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LUCY ABAJIAN-SALON, §
Plaintiff, §
§
vs. § CIVIL ACTION NO.
§
§ SA23CA1020JKP
CITY OF SAN ANTONIO, TEXAS §
Defendant. §
§

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Lucy Abajian-Salon, hereinafter called Plaintiff, complaining of and about City of San Antonio, Texas, hereinafter called Defendant, and for cause of action shows unto the Court the following:

### PARTIES AND SERVICE

1. Plaintiff Lucy Abajian-Salon, is a citizen of the United States and the State of Texas and resides in Bexar County, Texas.

2. Defendant, The City of San Antonio, Texas ("the City"), is a municipal corporation operating according to the Constitution and laws of the State of Texas. The City of San Antonio can be served with process by serving its City Clerk, Debbie Racca-Sittre or its City Manager, Erik Walsh at the City of San Antonio Offices at 100 W. Houston Street, San Antonio, Texas 78205 or wherever they may be found in any manner authorized by the Federal Rules of Civil Procedure.

3. The San Antonio Police Department (SAPD) is a municipal law enforcement department operating as an agency of Defendant. Police Chief William McManus

1

("McManus") was the Chief of Police for the San Antonio Police Department at the time these acts and/or omissions made the basis of this lawsuit occurred. At all times relevant to this suit, McManus was responsible for terminating a police officer's employment with Defendant.

## JURISDICTION

4. This action arises under 42 U.S.C. § 2000e-5(f)(3) as hereinafter set forth.

## NATURE OF ACTION

5. This is an action under Title 42 U.S.C. Section 2000e et. seq. as amended by the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex, age, and national origin.

## CONDITIONS PRECEDENT

6. All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter, attached hereto as Exhibit "A."

## FACTS

7. Plaintiff is a female who was born in 1974, in the country of Lebanon, and whose ethnic background is part Armenian and Lebanese.

8. Plaintiff asserts Defendant discriminated against her based upon her gender, age, national origin and ethnic/racial heritage.

9. Defendant hired Plaintiff as a San Antonio Police Officer on January 21, 2020.

10. Plaintiff attended the San Antonio Police Department Academy from January 21, 2020, to August 28, 2020.

11. Plaintiff successfully graduated from the San Antonio Police Academy and began patrol duties on August 29, 2020.

12. After graduation, Plaintiff was supervised by a Field Training Officer [FTO] and successfully completed her FTO training without any documented deficiencies.

13. Plaintiff began patrolling the City streets without an FTO before she was terminated.

14. Plaintiff had no on-duty related deficiencies during her tenure as an SAPD officer.

15. On April 6, 2021, Chief William McManus terminated Plaintiff based upon events that happened at or near her residence on or about December 18, 2020.

16. On or about December 1, 2020, and the next seventeen to eighteen days, Plaintiff had called the Bexar County Sheriff's Office to make noise complaints against the builders in her subdivision creating excessive noise.

17. On December 18, 2020, Plaintiff was off-duty at her residence that is outside the jurisdiction of the City of San Antonio.

18. On December 18, 2020, the construction workers continued to make noise that disturbed the peace, and Plaintiff spoke to the construction workers about the noise.

19. The foreman of the construction workers made false allegations of criminal mischief and the Bexar County Sheriff's Office responded to the false complaint.

20. Bexar County Sheriff's Office Deputies resolved the matter as a civil matter; the BCSO Deputies made no arrest, and the Deputies made no criminal complaint.

21. On December 19, 2020, Defendant, SAPD, required Plaintiff to fill out administrative form SAPD Form 200-OR.

22. This form is "for administrative internal police department purposes only, and will not be used against you in a criminal investigation."

23. Defendant conducted an illegal, baseless criminal investigation of the alleged events outside its jurisdiction.

24. Procedure 303 of the San Antonio Police Department provides a mechanism for conducting disciplinary investigations by the Internal Affairs Unit for non-criminal conduct.

25. Chief McManus testified in a deposition that when he fired Plaintiff:

    I have the authority to terminate a probationary officer without due process if I see fit to do that. And that's what I did in this case.

26. When Chief McManus fired Plaintiff, his Department did not conduct a complete Internal Affairs investigation.

27. The Internal Affairs Unit did not permit Plaintiff to respond to interrogatories though the IA Sergeant had prepared interrogatories for Plaintiff to answer.

28. The San Antonio Police Department did not allow its Internal Affairs Unit to submit an IA investigation to the CARB the Complaint and Administrative Review Board.

29. Chief McManus fired Plaintiff by serving her with Personnel Order 21-019 which alleged in part:

4

> On December 18, 2020, you were involved in an off-duty disturbance which developed in to a criminal investigation for the offense of Criminal Mischief.

30. There was no lawful criminal investigation for criminal mischief.
31. McManus' claim of events that happened on December 18, 2020, did not lawfully develop into a criminal investigation.
32. The incident happened outside the territorial limits of the City of San Antonio Texas.
33. Bexar County Sheriff's Office Deputies responded to Plaintiff's subdivision.
34. The Deputies for the Bexar County Sheriff's Office generated a SPEARS Summary Report under BCSO 20-0371052 in which BCSO classified the December 18, 2020, call for service as a civil matter with the entry:

> Made location and contacted complainant who stated that it was handled between themselves.

35. McManus testified that before he fired Plaintiff, he knew BCSO responded to the location.
36. McManus testified that he never complained to the Sheriff of Bexar County that the Deputies handled the call as a civil matter.
37. McManus testified that he never asserted the Deputies engaged in malfeasance in their handling of the call.
38. Although the San Antonio Police Department had no jurisdiction to conduct a criminal investigation against Plaintiff, SAPD did so.
39. SAPD IA Sergeant Glenn Michalek testified in a deposition that there was no criminal charge filed against Plaintiff with the Bexar County Criminal District Attorney's Office by testifying:

5

      If Integrity had filed with the -- the Bexar County District Attorney's office, I don't know that they can because it actually occurred out of our jurisdiction.

40. McManus alleged that Plaintiff committed criminal mischief by damaging an air compressor and a radio.

41. McManus believed Plaintiff had smashed a radio.

42. McManus' belief was false as no radio was present.

43. The items of property in question were an air compressor and a speaker.

44. No witness gave a statement of the value of the air compressor or speaker before the alleged incident.

45. No police officer obtained photographs of the air compressor or speaker before and after the incident.

46. No police officer tested the functionality of the speaker and air compressor before and after the incident.

47. No alleged owner of the speaker and air compressor filed a sworn statement that he or she wished to prosecute Plaintiff for criminal mischief.

48. IA Sergeant Glenn Michalek testified that he had filed criminal mischief cases when he worked in property crimes and therefore had the competence and knowledge of what constitutes criminal mischief.

49. Michalek testified that he knew whether the DA would accept or reject a case based upon the elements of criminal mischief.

50. Michalek testified that he knew based upon his knowledge, experience, and training, that when the prosecution cannot prove a loss in value, there can be no proof of criminal mischief.

51. Michalek further testified that when there is no substantial inconvenience, there can be no crime and in fact there was no evidence from any putative owners of property that they had suffered a substantial inconvenience.

52. Michalek had a copy of the SAPD "criminal investigation" and based upon Michalek's investigation, he knew based upon body worn camera videos, the job site had more than one size, colored and models of air compressors and did not know whether the putative owner's Hitachi compressor had been damaged.

53. Before McManus fired Plaintiff, he knew based upon his Department's "criminal investigation" that the owners of the property did not wish to press charges.

54. McManus testified that he knew that if there is no complainant, there is no crime to be charged.

55. When McManus initially fired Plaintiff he issued her a Dishonorable Discharge on an F-5 filed with the Texas Commission on Law Enforcement.

56. McManus testified that he corrected the F-5 to General because there was no evidence that Plaintiff committed a crime.

57. McManus' admission there was no crime contradicts his personnel order that terminated Plaintiff.

58. Plaintiff was a probationary officer at the time Defendant terminated her.

59. Plaintiff asserts that McManus and Defendant discriminated against her because he has not automatically fired other Probationary Officers.

60. Defendant has provided other probationary officers the full benefits of having a complete IA investigation and presentation of their case to the CARB.

61. Defendant has provided other probationary officers the ability to present a rebuttal to the allegations in a *Loudermill* hearing before discipline is imposed.

62. McManus, Defendant, did not give Plaintiff a *Loudermill* hearing.

63. Plaintiff alleges that Defendant treated her differently and more harshly than other probation officers who were younger than Plaintiff.

64. Plaintiff alleges that they treated her more differently and more harshly than other probationary officers who were born in the United States of America and/or are not of Lebanese/Armenian racial/ethnic heritage.

65. Plaintiff asserts that she was treated differently and more harshly than other probationary officers who are males.

66. Plaintiff asserts that male probationary officers were given an opportunity to rebut the allegations in Internal Affairs before Defendant made a decision to issue them discipline.

67. Plaintiff was denied that opportunity for an Internal Affairs investigation.

68. Plaintiff asserts male probationary officers were treated more leniently for far more egregious conduct than Plaintiff's alleged misconduct and these male probationary officers were not terminated.

69. On July 24, 2010, a male Probationary Officer, Luis Sone, brought reproach and discredit to the San Antonio Police Department, on his first day patrolling the City streets alone as an officer when:

    he allowed a witness to an apparent sudden death by drug overdose
    "a grace period to get rid of paraphernalia or any trash" that he
    didn't want police officers to find at the scene.

70. McManus did not fire Probationary Officer Luis Sone who committed an offense by encouraging and directing directed citizens to conceal or destroy evidence which would be a violation of Texas Penal Code Section 37.09.

71. Sone's conduct meets the elements of two felony offenses: (1) False report and (2) Tampering with evidence.

72. In 2014, male Probationary Officer Gary Tuli became intoxicated at a restaurant bar.

73. Probationary Officer Gary Tuli became belligerent with bar/restaurant guests and patrons.

74. Probationary Officer Gary Tuli was yelling at people showing his SAPD badge.

75. The matter was handled by BCSO deputies and Tuli was off duty.

76. BCSO issued Probationary Officer Tuli a criminal trespass warning and drove him home because he was too intoxicated to drive.

77. Tuli's conduct was more egregious than what was alleged against Plaintiff, yet Tuli's conduct, which also happened off duty, was also handled by BCSO, and was not criminally investigated for public intoxication or disorderly conduct. Moreover, McManus did not terminate Probationary Officer Tuli.

78. The disparity between Sone and Plaintiff is even more egregious when one considers:

    1. The City of San Antonio, Defendant, failed to conduct a criminal investigation against Sone, yet Defendant chose to initiate a criminal investigation against Plaintiff.

    2. Sone's misconduct directly related to his duties, and on-duty obligations as an SAPD officer.

    3. Sone's conduct was within the jurisdiction of the San Antonio Police Department whereas the actions of Plaintiff were outside the City's jurisdiction, i.e., its geographical boundaries.

    4.    Sone's misconduct involved dishonesty and impaired an ongoing investigation that was being conducted by SAPD; whereas, Plaintiff's conduct did not implicate honesty or an ongoing SAPD investigation.

79. The disparity between how Defendant treated Tuli and Plaintiff is egregious because Tuli was intoxicated, and Plaintiff was not.

80. Tuli was given a no trespass warning whereas Plaintiff had a right to be in her subdivision.

81. In 2011, Probationary Officer Sarah Carrasco, who based upon information and belief, was born in the United States and is younger than Plaintiff, was terminated from her position as a probationary officer for being involved in a verbal and physical altercation, exhibiting aggressive behavior during the incident.

82. During McManus' deposition, he realized he had no basis to claim a criminal case and changed his rationale for firing Plaintiff by claiming she aggressively approached the putative complainants.

83. After Carrasco was terminated, she was permitted to present a rebuttal to McManus, and he reinstated her under a last chance agreement.

84. McManus refused to meet with Plaintiff and had no opportunity to enter into a last chance agreement.

85. McManus accused Carrasco of being involved in a verbal and physical altercation.

86. McManus accused Carrasco of accepting a ride from an intoxicated person and continuing her altercation.

87. McManus' Last Chance Agreement with Carrasco establishes Carrasco's termination was based upon a specific IA case number and the findings of such investigation.

88. Carrasco's behavior was more egregious than that of Plaintiff and based upon information and belief, Carrasco is younger than Plaintiff and was born in the United States.

89. Plaintiff was deprived of the conditions of due process and fair treatment given to the other probationary officers by not having the benefit of an IA investigation or the ability to meet with the Chief.

90. The three probationary officers named above as comparators were similarly situated since all three, like, Plaintiff, were at will employees who lacked civil service protection, and none of the three probationary officers were of Armenian/Lebanese racial/ethnic heritage.

## SEX DISCRIMINATION

91. Plaintiff incorporates paragraphs 4 through 80 above.

92. Based upon the foregoing, Defendant, subjected Plaintiff to discrimination and engaged in unlawful employment practices involving Plaintiff because she is a female.

93. Defendant discriminated against Plaintiff in connection with the terms, conditions, and privileges of employment in violation of 42 U.S.C. Section 2000e-(2)(a). The effect of these practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.

## AGE DISCRIMINATION

94. Plaintiff was 46 years of age when Defendant terminated her employment.

95. Plaintiff incorporates paragraphs 4 through 93 above.

96. Based upon the foregoing, Defendant, subjected Plaintiff to discrimination and engaged in unlawful employment practices involving Plaintiff because her age.

97. Defendant discriminated against Plaintiff in connection with the terms, conditions, and privileges of employment in violation of 42 U.S.C. Section 2000e-(2)(a). The effect of these practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her age.

## DISCRIMINATION BASED UPON ETHNICITY, RACE, AND NATIONAL ORIGIN

98. Plaintiff incorporates paragraphs 4 through 97, above.

99. In addition to Plaintiff being born in Lebanon and her ethnic background is Armenian and Lebanese, Plaintiff also speaks six languages, English, French, Arabic, Lebanese, Armenian and German.

100. Defendant discriminated against Plaintiff in connection with the terms, conditions, and privileges of employment in violation of 42 U.S.C. Section 2000e-(2)(a). The effect of these practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her ethnicity, race, and national origin.

101. Defendant also discriminated against Plaintiff in connection with the terms, conditions, and privileges of employment in violation of 42 U.S.C. Section 1981. The effect of these practices has been to deprive Plaintiff of equal employment

opportunities and otherwise adversely affect her status as an employee because of her racial identity and or her ethnic heritage and or her national origin.

## DAMAGES

102. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described herein above:

    a.    All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

    b.    Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

    c.    All reasonable and necessary costs of court and expenses incurred in pursuit of this suit;

    d.    Emotional pain;

    e.    Expert fees as the Court deems appropriate;

    f.    Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

    g.    Interest;

    h.    Mental anguish in the past;

    I.    Mental anguish in the future;

    j.    Loss of earning capacity which will, in all probability, be incurred in the future;

    k.    Loss of retirement benefits;

    l.    Loss of medical benefits; and

    m.    Compensatory damages.

## SPECIFIC RELIEF

103.   Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendant described herein above:

  a.   Rehire Plaintiff; and

  b.   Reinstate Plaintiff to the position and pay grade which Plaintiff held but for the unlawful employment actions of Defendant.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Lucy Abajian-Salon, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final deposition of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

By: _____
Pro Se
Lucy Abajian-Salon
13909 Westbury Falls
San Antonio, TX 78253
(619)756-4572
lucy_abajian@yahoo.com

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**



**U.S. Department of Justice**
**Civil Rights Division**

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson, EMP, 4CON, Room 9.514*
*Washington, DC 20530*

May 19, 2023

Ms. Lucy Abajian-Salon
c/o Ben M. Sifuentes, Esquire
Sifuentes Law
342 W. Woodlawn Ave.
Suite 302
San Antonio, TX 78212

Re: EEOC Charge Against San Antonio Police Dept., et al.
   No. 451202200698

Dear Ms. Abajian-Salon:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC San Antonio District Office, San Antonio, TX.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                                         Sincerely,

                                         Kristen Clarke
                                         Assistant Attorney General
                                         Civil Rights Division

                                    by     /s/ Karen L. Ferguson
                                         Karen L. Ferguson
                                         Supervisory Civil Rights Analyst
                                         Employment Litigation Section

cc: San Antonio District Office, EEOC
   San Antonio Police Dept., et al.

**EXHIBIT A**