UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LUCY ABAJIAN-SALON,

   *Plaintiff*,

v.                                                          Case No.  SA-23-CV-01020-JKP

CITY OF SAN ANTONIO, TEXAS,

   *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant, the City of San Antonio's, Motion for Summary Judgment. *ECF Nos. 22,42*. Plaintiff Lucy Abajian-Salon responded. *ECF No. 41*. Upon consideration, the motion is GRANTED.

**Factual Background**

Hired on January 1, 2020, Plaintiff Lucy Abajian-Salon was an employee of the City of San Antonio working as a San Antonio Police Officer until her termination on April 6, 2021. Abajian-Salon attended the San Antonio Police Academy from January 1, 2020, to August 28, 2020. During her Academy training, Abajian-Salon received two disciplinary citations: (1) failure to follow the directive of a supervisor to report all medical documentation, specifically an initial doctor's report placing her on limited duty due to an injury, and; (2) use of deadly force when not necessary. *ECF Nos. 22-6, 22-7, 22-8*. An instructor also submitted a Report recommending Abajian-Salon not pass the Academy training due to repeated demonstration of inability to defend herself in combat, resulting in the instructor's opinion that she would be a danger to herself, fellow officers, and the public. *ECF No. 22-7*.

Following her graduation from the Academy, Abajian-Salon began work as a Police Officer on a one-year, probationary-employee status, as is undisputedly standard for all new officers. During this time, a Field Training Officer (FTO) worked in the field and supervised Abajian-Salon. Abajian-Salon successfully completed this "FTO training" without any documented deficiencies. Abajian-Salon received no on-duty related disciplinary actions during her tenure as an SAPD officer, and her probationary-employee status was scheduled to end on August 28, 2021.

On December 18, 2020, while Abajian-Salon was off duty at her residence that is outside the City of San Antonio, she and her daughter approached a construction crew working on a residence across from her home to speak to them about loud music and noise. Although off-duty, Abajian-Salon carried her service ASP baton, and her daughter carried a small wooden bat. Abajian-Salon contends she did not cause damage to any property; however, she admits she gave the construction foreman $100 and left the site.

Based upon her comments and presence at the site, the construction foreman called the Bexar County Sheriff's Office and reported Abajian-Salon damaged a radio and a generator, which prompted a Sheriff Deputy to respond for investigation. On that same date, a Sheriff Deputy interviewed Abajian-Salon at her home while wearing a body camera. The Deputy also spoke with the construction workers involved in the incident, who provided their pictures and video of the incident, but communicated to the officer that they did not want to pursue any criminal charges against Abajian-Salon.

The next day, Abajian-Salon told her supervisor about the incident, and her supervisor initiated an investigation with the SAPD Internal Affairs Department. *ECF Nos. 22-13, 22-14, 22-15*. Following the investigation, on April 7, 2021, San Antonio Police Chief McManus terminated Abajian-Salon's employment, stating, "[o]n December 18, 2020, you were involved in an

2

off-duty disturbance which developed into a criminal investigation for the offense of Criminal Mischief. Based on the results of that investigation, it has been determined that you have not met the fundamental requirements to be a San Antonio Police Officer. Therefore, as a result, your employment as a police officer with the City of San Antonio is being terminated effective April 8, 2021." *ECF No. 22-9*. On April 8, 2021, the investigating office with the Internal Affairs Unit issued a Report stating, "[b]ased on the information provided by the construction workers, a criminal investigation . . . was initiated. The Integrity Unit was able to validate elements of the offense for a criminal mischief charge against Officer Abajian-Salon, but both workers completed Complaint Waivers and the criminal investigation was closed." *ECF No. 22-10*. The Report also states Abajian-Salon was terminated prior to responding to the Report. Because Abajian-Salon had been terminated, the investigator deactivated the internal investigation on April 8, 2021, without proving a conclusion or recommendation. *Id*.

Abajian-Salon filed a Complaint with the EEOC alleging discrimination based upon her "sex, female; national origin (Lebanese/Armenian), and age, 44 (DOB: 11/09/1976), in violation of Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, as amended, and the Texas Commission on Human Rights Act, as amended." *ECF No. 22-16*. Following termination of the EEOC administrative process, Abajian-Salon filed this suit on August 16, 2023.

In the First Amended Complaint, Abajian-Salon asserts she was 46 years' old at the time of her termination, and her ethnic background is Armenian and Lebanese. *ECF No. 17, p. 12*. Abajian-Salon asserts causes of action for discrimination based upon her gender in violation of "42 U.S.C. Section 2000e-(2)(a) and the Texas Labor Code," discrimination based upon her age in violation of "42 U.S.C. Section 2000e-(2)(a) and the Texas Labor Code," and discrimination

based upon "her ethnicity, race, and national origin" in violation of "42 U.S.C. Section 2000e-(2)(a) and the Texas Labor Code" as well as "42 U.S.C. Section 1981." *ECF No. 17, pp. 11-12*. The City of San Antonio moves for summary judgment on all asserted causes of action.

**Legal Standard**

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[1] "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by demonstrating the absence of facts supporting specific elements of the

---

[1] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994).

To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; *Rodriguez*, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586-87; *see also* Fed. R. Civ. P. 56(c). Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)(citing *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994)). Further, should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music*, *Inc. v. Bentley*, SA-16-CV-394, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v.*

*Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005)(citations omitted).

## Discussion

### 1. Violations of the Texas Labor Code

In her First Amended Complaint, within each asserted cause of action, Abajian-Salon asserts the City of San Antonio's actions violated "the Texas Labor Code." Abajian-Salon does not specify any chapter or section of the Texas Labor Code which prohibits the alleged discriminatory acts, nor does she provide specific factual basis for the asserted violations of "the Texas Labor Code." This omission, alone, is sufficient to dismiss any cause of action asserted under the Texas Labor Code.

However, in the interest of caution, the Court liberally construes Abajian-Salon's First Amended Complaint to attempt to assert violations of Chapter 21 of the Texas Labor Code. *See Longoria v. Via Metro. Transit*, No. SA-21-CV-01171-JKP, 2022 WL 1445396, at *6–7 (W.D. Tex. May 6, 2022)(the same counsel, Alan Poncio, made the same pleading error, and this Court liberally construed the intent).

"[C]ourts refer to Chapter 21 of the [Texas] Labor Code as the Texas Commission on Human Rights Act [TCHRA]." *Id.* (quoting *Prairie View A&M University v. Chatha*, 381 S.W.3d 500, 502 n.1 (Tex. 2012). The TCHRA is modeled after Title VII and imposes a requirement that a claimant file an initial complaint with the Texas Workforce Commission Civil Rights Division or the EEOC should an alleged unlawful employment practice occur. *Prairie*

*View A&M University*, 381 S.W.3d at 503; Tex. Labor Code Ann. § 21.202.[2] When an employee files a Charge with the EEOC, the charge will also be considered filed with the Texas Workforce Commission. *Vielma v. Eureka Co.*, 218 F.3d 458, 462–63 (5th Cir. 2000); *Griffin*, 26 F.3d at 612–14; *Price v. Philadelphia Am. Life Ins. Co.*, 934 S.W.2d 771, 773 (Tex.App.-Houston [14th Dist.] 1996, no writ). However, a claimant must receive a Right to Sue Letter from the Texas Workforce Commission to complete exhaustion of administrative remedies on a cause of action for violation of the TCHRA. *Vielma*, 218 F.3d at 463-64. Receipt of an EEOC Right to Sue letter does not satisfy this requirement. *Id.* Unlike Title VII, a claimant who seeks to assert violations under the TCHRA must file suit within sixty (60) days of receipt of the Right to Sue Letter. *Id.* at 463; Tex. Labor Code Ann. §§ 21.202, 21.254.

Abajian-Salon is represented by the same counsel as that in *Longoria v. Via Metro. Transit*, Adam Poncio. As in that case, Abajian-Salon does not assert she filed an initial complaint with the Texas Workforce Commission Civil Rights Division; she only asserts she filed a Charge of Discrimination with the EEOC. Abajian-Salon asserts only that she received a Right to Sue Letter from the EEOC; she does not allege he received a similar letter from the Texas Workforce Commission. *See ECF No. 17, p. 2*.

Consequently, to the extent Abajian-Salon seeks to allege any causes of action based upon violation of the TCHRA, or "the Texas Labor Code", these causes of action are dismissed without prejudice for failure to exhaust administrative remedies. *See Vielma*, 218 F.3d at 463-

---

[2] In both the federal and Texas state systems, a complainant must file a complaint with the appropriate agency before filing suit. *Vielma v. Eureka Co.*, 218 F.3d 458, 462–63 (5th Cir. 2000). In 1989, the TCHR and the EEOC entered a Worksharing Agreement to minimize unnecessary duplication of effort and make the operations of the two agencies more efficient. *Id.* Under the Worksharing Agreement, "the EEOC and the [TCHR] each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges." 1998 Worksharing Agreement § II(A); *Vielma*, 218 F.3d at 462–63.

64; *Longoria v. Via Metro. Transit*, 2022 WL 1445396, at *6–7; Tex. Labor Code Ann. §§ 21.202, 21.254.

### 2. Age Discrimination

In her First Amended Complaint, Abajian-Salon asserts a cause of action for age discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–2(a)(1). *See ECF No. 17, pars. 4, 94-97*.

Title VII protects employees from discrimination "because of [an] individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) and (2). By its terms, age is not a protected class under Title VII. Therefore, Title VII does not provide a cause of action for age discrimination. *Espina v. City of San Antonio*, No. SA-21-CV-01176-JKP, 2022 WL 3362286, at *8 (W.D. Tex. Aug. 15, 2022)(the same counsel, Alan Poncio, made the same pleading error); *Jefferson v. Hosp. Partners of Am., Inc.*, No. CIV.A. H-08-1535, 2009 WL 8758090, at *6 (S.D. Tex. May 18, 2009), aff'd sub nom. *Jefferson v. Christus St. Joseph Hosp.*, 374 Fed. Appx. 485 (5th Cir. 2010); *Cornell v. Principi*, Civ. A. No. H-04-2386, 2006 WL 1007528, at *3 n. 4 (S.D. Tex. Apr.13, 2006).

Because age is not a protected class under Title VII, Abajian-Salon cannot assert a cause of action for age discrimination under Title VII as a matter of law. Consequently, the City of San Antonio's Motion for Summary Judgment on this cause of action for age discrimination in violation of Title VII shall be granted and this cause of action dismissed.

### 3. Discrimination Based Upon National Origin

Title VII prohibits covered employers from discrimination against individuals with respect to their terms, conditions, or privileges of employment because of their national origin[3]. 42 U.S.C. § 2000e-2(a)(1). An unlawful employment practice is established when the complaining party demonstrates national origin was a motivating factor for any employment practice, even though other factors also motivated the practice. *Id*. § 2000e-2(m).

Plaintiffs may prove intentional discrimination in violation of Title VII either by direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Stroy v. Gibson ex rel. Dep't of Veterans Affairs*, 896 F.3d 693, 698 (5th Cir. 2018). "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Palacios v. City of Crystal City*, 634 F. App'x 399, 402 (5th Cir. 2015)(quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993)). "If an inference is required for the evidence to be probative … the evidence is circumstantial, not direct." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897–98 (5th Cir. 2002). Analysis in this case is based upon circumstantial evidence.

When analyzing claims of disparate or discriminatory treatment in violation of Title VII when the alleged discrimination is based upon circumstantial evidence, only, courts utilize the burden-shifting framework set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981); *Stroy*, 896 F.3d at 698. Under the *McDonnell Douglas* framework, even in the summary judgment context, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evi-

---

[3] In her First Amended Complaint, Abajian-Salon states she was discriminated based upon her "ethnicity, race, and national origin." However, based upon her factual allegations and the EEOC charge, it appears Abajian-Salon does not intend to assert her "race" was a motivating factor in her termination. National Origin discrimination is based on an individual or his/her ancestors' country of origin or the individual's physical, cultural, or linguistic characteristics of a particular national origin group. *See* 29 C.F.R. §1606.1. For this reason, this Court will consider any attempt to assert a cause of action based upon Abajian-Salon's "race" to be an error and ineffectual.

dence. *Burdine*, 450 U.S. at 252–53. Carrying this initial burden creates an inference or presumption of discrimination. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978). "The burden of establishing a prima facie case of disparate treatment is not onerous" and varies dependent upon the particular circumstances of each case. *Burdine*, 450 U.S. at 253 and n.6; *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012).

In general, to establish a prima facie case of discrimination, the plaintiff must show (1) membership in a protected group; (2) they are qualified for the position at issue; (3) an adverse employment action by the employer; and (4) they were replaced by someone outside the protected group or treated less favorably than other similarly situated employees outside the protected group. *McCoy*, 492 F.3d at 556. "In work rule violation cases, a Title VII plaintiff may establish a prima facie case by showing either (1) that she did not violate the rule or (2) that if she did, other employees who engaged in similar acts were not punished similarly." *Turner*, 675 F.3d at 892–93.

Once the plaintiff establishes the prima facie case, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action." *McCoy*, 492 F.3d at 557; *Wheat*, 811 F.3d at 710. This "burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy*, 492 F.3d at 557; *see also Reeves*, 530 U.S. at 142. If the employer satisfies its burden in the summary judgment context, the plaintiff then bears the ultimate burden of presenting evidence which raises a genuine dispute of material fact whether the employer's proffered reason is not true, but instead, is a pretext for the real discriminatory purpose. *McCoy*, 492 F.3d at 557.

To meet this burden of persuasion, a plaintiff has two alternatives to refute the employer's articulated reason by offering evidence sufficient to create a genuine dispute of material fact. *Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004). Through the mixed-motives alternative, a plaintiff may present evidence sufficient to raise a genuine dispute whether "the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic." *Id*. Through the pretext alternative, a plaintiff may present evidence sufficient to raise a genuine dispute whether the defendant's reason is not true, but is, instead, pretext for discrimination. *Id*.; *see also Burdine*, 450 U.S. at 253.

Under this burden-shifting *McDonnell Douglas* framework, Abajian-Salon bears the initial burden of establishing a prima facie case of discrimination based upon her national origin/ethnicity. *See Burdine*, 450 U.S. at 252–53; *McCoy*, 492 F.3d at 556–57. The City of San Antonio does not dispute the first three prongs of Abajian-Salon's prima facie, summary judgment burden. The City of San Antonio argues Abajian-Salon cannot meet her prima facie burden because she cannot produce evidence to show similarly situated employees were treated better than her under nearly identical circumstances. Even if she could meet this burden, the City of San Antonio contends it offers a legitimate, non-discriminatory reason for her termination, and Abajian-Salon cannot present evidence which raises a genuine dispute whether this reason is pretext for discrimination.

To support her prima facie, summary judgment burden, Abajian-Salon offers evidence of disciplinary sanctions issued against two male officers who committed acts she alleges were more egregious than hers; however, they were suspended, not terminated. First, Abajian-Salon identifies an officer who "failed to secure and protect the crime scene and any physical evidence by allowing a witness and to enter and remain in the crime scene area and "allowed a po-

11

tential suspect to remove possibly incriminating drugs, paraphernalia and other material at the scene before it could be inventoried and processed." *ECF No. 41-5*. This report shows the officer involved was suspended for twenty days, but does not show the officer involved was on probationary status as Abajian-Salon was at the time of her termination, nor does it reveal the national origin of the officer. *Id*. Next, Abajian-Salon presents evidence which identifies an off-duty probationary officer who was suspended for thirty days because he became intoxicated at a restaurant bar and harassed patrons while flashing his SAPD badge. The matter was handled by Bexar County Sheriff Deputies who issued the officer a criminal trespass warning and drove him home because he was too intoxicated to drive. *ECF No. 41-6*.

While this evidence does not indicate the national origin of the officers involved and is not completely convincing on the issue whether these officers were "similarly situated", with liberal construction, the Court finds this evidence is sufficient to satisfy Abajian-Salon's initial summary judgment burden of proof. The burden, then, shifts to the City of San Antonio to offer a legitimate, non-discriminatory reason for Abajian-Salon's termination.

To satisfy this burden, the City of San Antonio contends its decision to terminate Abajian-Salon was not based on her ethnicity or national origin, but instead, resulted from her off-duty misconduct on December 18, 2020, during her probationary employment period. The City of San Antonio contends this legitimate, non-discriminatory reason is supported by Abajian-Salon's admission of investigation by the Bexar County Deputies and the ensuing internal investigation by the SAPD Internal Affairs Department.

To support its position, the City of San Antonio offers evidence of the relevant SAPD Collective Bargaining Agreement which demonstrates the SAPD may terminate any employee in the probationary period for any reason. This Collective Bargaining Agreement states:

> Following graduation from the Police Academy, during the Officer's probationary period an Officer may be disciplined or discharged without written notice and/or without cause at the discretion of the Chief. Such action shall not be reviewable by an arbitrator, the Commission, or any court. An Officer does not become entitled to protection against discipline or discharge by the provisions of the civil service law or this agreement, except upon completion of said probationary period. Upon successful completion of the probationary period, the Officer shall be eligible for all rights under this agreement.

*ECF No. 22-2, p. 72.*

In his report, the Internal Affairs Investigator concluded he "was able to validate elements of the offense for a criminal mischief charge against Officer Abajian-Salon, but both workers completed Complaint Waivers and the criminal investigation was closed." The Internal Affairs Investigator submitted his full investigation file and reports, but did not offer a final "Conclusion/Recommendation" because "Probationary Officer Abajian-Salon's employment with the San Antonio Police Department was terminated on April 7, 2021, in accordance with the Collective Bargaining Agreement prior to the conclusion of this investigation." *ECF No. 22-10, p. 2.*

Finally, given Abajian-Salon's probationary employment status, Chief McManus terminated Abajian-Salon after concluding she was "involved in an off-duty disturbance which developed into a criminal investigation for the offense of Criminal Mischief. Based on the results of that investigation, it has been determined that you have not met the fundamental requirements to be a San Antonio Police Officer." *ECF No. 22-9.*

Even viewing the facts in the light most favorable to Abajian-Salon and consistent with her position that she did not confront the construction workers and did not damage any property, the evidence presented by the City of San Antonio supports its legitimate, nondiscriminatory

reason for her termination during her probationary employment period. *ECF Nos. 22-2, p. 72, 22-9, 22-10.*

With this demonstration of a legitimate, non-discriminatory reason for her termination, the burden swifts back to Abajian-Salon to demonstrate this reason is not true, or even if true, another discriminatory reason served as basis for her termination. *See Burdine*, 450 U.S. 2248, 252- 53 (1981); *Hassen*, 932 F.3d at 356. "An employee's subjective belief of discrimination, alone, is not sufficient to warrant judicial relief." *Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001).

In response to the City of San Antonio's Motion for Summary Judgement on this shifting burden, Abajian-Salon states only in conclusory fashion that she:

> demonstrates that the City's basis are false and 'mere pretext.' *See Hassen v. Ruston La. Hosp. Co.*, 932 F.3d 353, 356 (5th Cir. 2019). Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false, which Plaintiff has demonstrated in this case. *See Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001). Moreover, under the circumstances, Chief McManus admits he may have wrongfully terminated Plaintiff and the evidence demonstrates that comparators were treated differently and not terminated. Defendant has not carried its burden to demonstrate that no discrimination against national origin took place and the City's motion should be denied as to Plaintiff's ethnicity, national origin and race claims under Title VII, 1981 and the Texas Labor Code.

*ECF No. 41, p. 29*. Later, Abajian-Salon argues the City of San Antonio's assertion that she was terminated because "she was the subject of a civil complaint of damage or criminal mischief is false and not supported by the improper attempt at investigation" because the Bexar County deputies at the scene "determined the matter was a civil matter and there was no investigation nor a complaint." *Id*. at pp. 37-38.

This argument fails because the evidence reveals the Sheriff Deputies did not pursue criminal investigation at the construction workers' request. However, the San Antonio Police

14

Department did pursue an internal investigation into Abajian-Salon's actions to determine whether any internal policies or code of conduct were violated, and she was terminated for violation of these internal policies and guidelines pursuant to the allowed terms of the Collective Bargaining Agreement.

Abajian-Salon also asserts Police Chief McManus "admittedly wrongfully terminated her because "the SAPD did not conduct a complete Internal Affairs investigation. For example, the Internal Affairs Unit did not permit Plaintiff to respond to interrogatories though the IA Sergeant had prepared interrogatories for Plaintiff to answer. McManus admitted he did not have the authority to fire someone with insufficient proof and stated that he would never do that. (Exhibit A, McManus deposition at p. 38 L 23 – p 39 L 4)." Abajian-Salon also contends Chief McManus "also admitted that if he fired Abajian-Salon when she did not commit criminal mischief or there was insufficient proof of criminal mischief, he fired her wrongly. (Exhibit A, McManus deposition at p.39 LL 5 15)." Finally, Abajian-Salon contends this "evidence shows there was no evidence of criminal mischief and there was insufficient evidence of criminal conduct."

Review of the cited excerpts of Chief McManus's deposition reveals Abajian-Salon's characterizations to be incorrect. The Internal Affairs Unit did conduct an investigation into the subject incident on December 18, 2020, and even if Abajian-Salon was not permitted to respond to its findings prior to her termination, the results of this investigation were sufficient basis to terminate her employment during the probationary period pursuant to the Collective Bargaining Agreement. Further, while Chief McManus did state, as Abajian-Salon asserts, that "he did not have the authority to fire someone with insufficient proof," he also stated that in this case, he did have sufficient basis to terminate Abajian-Salon's employment during the probationary pe-

riod based upon her conduct, alone, on December 18, 2020, even if the conduct did not amount to criminal mischief. Finally, Abajian-Salon's argument that "the evidence shows there was no evidence of criminal mischief and there was insufficient evidence of criminal conduct" is incorrect because the evidence consisting of the internal investigation report is evidence that her conduct constituted criminal mischief.

Abajian-Salon argues further that the City of San Antonio "failed to follow its own handbook and guidelines requiring an investigation. Defendant conducted essentially no investigation and instead terminated Plaintiff based on false assumptions."

These conclusory and unsubstantiated assertions are not sufficient to create a genuine dispute whether the City of San Antonio's proferred reason is pretext, and therefore are not sufficient to defeat the Motion for Summary Judgment. Even accepting as true Abajian-Salon's arguement that the City of San Antonio conducted "no investigation and instead terminated [Abajian-Salon] on false assumptions," these bases are not in violation of Title VII. Even if the City of San Antonio terminated Abajian-Salon based on "false assumptions," or even if the City of San Antonio conducted "no investigation," Abajian-Salon still fails to present any evidence which would raise a genuine dispute of material fact that her national origin served as reason for her termination. Abajian-Salon failed to identify any evidence in the record to support her conclusory allegations of pretext or to show her national origin served as basis for her termination. *See Ragas*, 136 F.3d at 458 (citing *Forsyth,* 19 F.3d at 1537). This Court will not comb the record to find supporting evidence. Abajian-Salon's assertions that the City of San Antonio relied on false assumptions or even conducted an improper investigation by failing to allow her to respond to the Report, do not establish, by inference, that Abajian-Salon's national origin did serve as the basis for her termination.

Because Abajian-Salon fails to offer or identify evidence in support of her burden of persuasion to show pretext, she failed to satisfy her burden to defeat the City of San Antonio's Motion for Summary Judgment on her cause of action for discrimination based upon her national origin/ethnicity in violation of 42 U.S.C. § 2000e-2. See *Burdine*, 450 U.S. at 253. For these reasons, the City of San Antonio's Motion for Summary Judgment on this cause of action will be granted.

### 4. Gender Discrimination

Employment discrimination against an individual based on their gender is prohibited under Title VII. See 42 U.S.C. §2000e-2. As before, Abajian-Salon does not assert any facts to support direct evidence of gender discrimination. Consequently this Court will utilize the *McDonnell Douglas* framework to analyze the Motion for Summary Judgment on this cause of action. to establish a prima facie case of gender discrimination, the plaintiff must show (1) membership in a protected group; (2) they are qualified for the position at issue; (3) an adverse employment action by the employer; and (4) they were replaced by someone outside the protected group or treated less favorably than other similarly situated employees outside the protected group. *McCoy*, 492 F.3d at 556. "In work rule violation cases, a Title VII plaintiff may establish a prima facie case by showing either (1) that she did not violate the rule or (2) that if she did, other employees who engaged in similar acts were not punished similarly." *Turner*, 675 F.3d at 892–93.

To satisfy her summary judgment burdens of proof and persuasion, and in response to the City of San Antonio's Motion for Summary Judgment on Abajian-Salon's gender-

discrimination cause of action, Abajian-Salon argues, only, the "[t]he arguments above as to Ethnicity, Race and National Origin and Age apply with regard to the sex discrimination claims raised by Plaintiff and Defendant's motion should be denied. They are incorporated again herein for all purposes. Defendant's Motion should be denied." *ECF No. 41, p. 33*.

By making this conclusory, summary argument, Abajian-Salon fails to satisfy her summary judgment burdens of proof and persuasion on this cause of action for the same reasons she failed to satisfy these burdens to defeat summary judgment on the cause of action for discrimination based upon her national origin. Therefore, Defendant City's Motion for Summary Judgment on Abajian-Salon's cause of action for gender discrimination will be granted.

## Conclusion

For the reasons stated, the City of San Antonio's Motion for Summary Judgment on Abajian-Salon's asserted causes of action for violations of Title VII based upon discrimination based upon Abajian-Salon's gender, age, and national origin/ethnicity is GRANTED. The City of San Antonio's Motion for Summary Judgment on Abajian-Salon's asserted causes of action for violations of "the Texas Labor Code" is GRANTED.

The Clerk of Court is DIRECTED to CLOSE THIS CASE.

This Court will issue a Final Judgment separately.

It is so ORDERED.
SIGNED this 4th day of December, 2024.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE